# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF OHIO BRICKLAYERS HEALTH AND WELFARE FUND, et al., | CASE NO.  5:20-cv-368 |
| Plaintiffs, | JUDGE SARA LIOI |
| vs. | |
| MASONRY CONTRACTING CORPORATION, et al., | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Before the Court is the motion for summary judgment filed by plaintiffs Trustees of Ohio Bricklayers Health and Welfare Fund, Trustees of Ohio Bricklayers Pension Fund, Trustees of Ohio Bricklayers Apprenticeship, Education, and Training Trust Fund, Trustees of the Bricklayers and Allied Craftworkers Local No. 7 Pension Fund, Trustees of the Bricklayers and Allied Craftworkers Local Union No. 16 Vacation and Savings Fund (collectively, the "Funds"); and Bricklayers and Allied Craftworkers Local Union No. 7, Bricklayers and Allied Craftworkers Local Union No. 16, and Bricklayers and Allied Craftworkers Local Union No. 40 (collectively, the "Local Unions") (both groups together, "plaintiffs"). (Doc. No. 24.) Defendants Masonry Contracting Corporation ("MCC") and Matthew J. Birch ("Birch") (collectively, "defendants") filed a brief in opposition (Doc. No. 28) and plaintiffs filed a reply (Doc. No. 29). For the reasons

set forth herein, based on the parties' briefing and the hearing conducted on September 10, 2021, plaintiffs' motion is granted in part.[1]

## I. BACKGROUND

On February 19, 2020, plaintiffs filed a complaint against defendants to compel an audit, for injunctive relief, and for money damages, alleging jurisdiction under the Labor-Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 185, and the Employee Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1109, 1132(a)(3), (e), (f) & (g) and 1145. (Doc. No. 1, Complaint.)

Plaintiff Funds are "multiemployer plan[s]" under ERISA, 29 U.S.C. § 1002(37)(A). They are maintained pursuant to collective bargaining agreements ("CBA") of the plaintiff Local Unions, which are "labor organization[s]" within the meaning of the LMRA, 29 U.S.C. § 152(5). The Funds are trust funds established in accordance with the LMRA, 29 U.S.C. § 186, for the purpose of providing health care, pension, and related benefits for participants and their dependents. (Doc. No. 1 ¶¶ 2–4.)

Defendant MCC is an "employer" and a "party in interest" in an "industry . . . affecting commerce" within the meaning of ERISA. 29 U.S.C. § 1002(5), (11), (12), and (14). (*Id*. ¶ 5.) Defendant Birch is an owner and officer of MCC (*Id*. ¶ 6; *see also* Doc. No. 25, Deposition of Matthew J. Birch at 8[2]) and, according to defendants, he is also a fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(21). (Doc. No. 1 ¶ 6.)

---

[1] Plaintiffs also filed a motion to strike defendants' jury demand. (Doc. No. 26.) Defendants have filed no opposition and, at the hearing on September 10, 2021, they agreed they are not entitled to a jury in this case. Therefore, that motion is granted.

[2] All page number references herein are to the consecutive page numbers applied to each document by the Court's electronic filing system.

On December 5, 2019, Fund auditors requested that MCC provide the information and documents necessary to audit its records. MCC failed to provide complete information and documents. This lawsuit followed. (Doc. No. 24-4, Declaration of Plan Manager Eryka Stamatakos ¶ 7.)

According to the audit report produced by the Funds' accountants at Blue & Co., the total amount due from MCC for the relevant period is $68,375.27, plus $14,000 in audit fees, for a total of $82,375.27. (Doc. No. 24-3, Audit Report at 4.)

The Funds also argue that Birch, a fiduciary within the meaning of ERISA, treated MCC's account like his own personal monies, while failing to use MCC funds to pay the required contributions, and should, due to this breach of fiduciary duty, be held personally liable for the delinquent contributions and all related penalties and interest.

Plaintiffs seek summary judgment jointly and severally against MCC and Birch.

## II. SUMMARY JUDGMENT STANDARD

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v.*

3

*Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co*., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ*., 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ*., 351 F.3d 240, 247 (6th Cir. 2003) (quotation marks and citation omitted). Rule 56 further provides

4

that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); s*ee also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.") (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. DISCUSSION

**A.     Whether MCC Breached its Contractual and Statutory Duty to Make Contributions**

On April 10, 2017, Birch, as President of MCC, signed the Special State of Ohio Masonry Agreement (the "Statewide Agreement"). (Doc. No. 24-5 at 13[3]; Doc. No. 25 at 25–26.) Article VIII (A) of the Statewide Agreement provides that, when MCC works in the jurisdiction of a Local Union, "[w]ages, benefit contributions, apprentice ratios and working conditions will be paid and implemented as prescribed in the appropriate local agreement as provided in Article VII 'Local Agreements' . . . ." (Doc. No. 24-5 at 8.) Birch agreed at his deposition that he set wages "based on the local rates." (Doc. No. 25 at 28.) Pursuant to Article VII(A)(1) of the Statewide Agreement, MCC agreed to be "bound by the terms, conditions and provisions of the trust agreements" governing the Funds and "to make the contributions called for by said agreements . . . at the rate and in the manner specified therein[.]" (Doc. No. 24-5 at 6.)

During the period of April 10, 2017 through August 2020, MCC worked in the jurisdictions of Local 5, Local 6, and plaintiffs Local 7, Local 16, and Local 40.[4] (Doc. No. 25 at 41.) The CBAs of these unions required that contribution reports and payments be made to the Funds by the 15th

---

[3] Article I of the Statewide Agreement provides that it "remain[s] in effect for three (3) years and shall automatically continue yearly thereafter unless notice of modification or termination is given by certified mail in writing by either party to the other at least sixty (60) days prior to the anniversary date." (Doc. No. 24-5 at 2.) Birch admitted that no notice of termination was given. (Doc. No. 25 at 29–30.)

[4] At the hearing on this motion, plaintiffs' counsel noted that Locals 7, 16, and 40 were specifically named as plaintiffs because MCC owes them outstanding dues that cannot be recovered by any of the Funds.

5

day of the month. (*See, e.g.*, Doc. No. 24-6, Local 7 2014–2019 CBA at 11 (Section N: "the employer will pay such benefits once each month . . . not later than the fifteenth (15th) of each month following the month wherein the hours were worked."); *see also* Doc. No. 24-8, Local 16 CBA at 15; Doc. No. 24-9, Local 40 CBA at 36; Doc. No. 24-10, Local 6 CBA at 20–21.)

Plaintiffs argue that MCC failed in its contractual and statutory duty to report all hours worked and to make timely and accurate contributions to the various Funds and Local Unions. (Doc. No. 24 at 17.)

Bricklayers Local 5 Funds brought a separate lawsuit against MCC after MCC also refused, as it did here, to provide an audit to those Funds. *See Local Union No. 5 Trustees of the Bricklayers & Masons', Ohio Pension Fund v. Masonry Contacting Corporation*, No. 1:19-cv-1273 (Burke, M.J.). On January 25, 2021, the parties having consented to her jurisdiction, Magistrate Judge Burke granted summary judgment in favor of the Local 5 Funds and issued a monetary judgment covering delinquent contributions, liquidated damages, and attorney fees and costs. Defendants argue here that the Local 5 lawsuit results in preclusion of the instant lawsuit either in whole or in part. Defendants also argue that Local 6 is not mentioned in the instant complaint and, therefore, cannot be considered or included (as it is) in the audit report. (Doc. No. 28 at 6–10.)

Plaintiffs argue in reply that all of these local unions, except Local 5, fall within the scope of the complaint because *all* local unions fall within the scope of the Statewide Agreement and within the scope of the audit originally requested. (*See* Doc. No. 29 at 7–10.) Further, at the hearing on the motion, plaintiffs pointed out that all of the unions covered by the Statewide Agreement fall within the enforcement responsibilities of the first three named plaintiffs in this complaint, who are fiduciaries authorized by 29 U.S.C. § 1132(a) to bring actions on behalf of the participants and beneficiaries of the funds. According to plaintiffs, the complaint alleges an ERISA claim for

6

recovery of all delinquencies encompassed by the audit that was requested by this lawsuit.[5] (*See* Doc. No. 1 ¶¶ 10, 24, 25, 30.)

The Court concludes that this lawsuit properly encompasses delinquencies related to Locals 6, 7, 16, and 40. To the extent there may be overlap with the judgment already issued in favor of Local 5 (as defendants argue), that will be considered below in relation to plaintiffs' request for a monetary judgment.

Defendants, arguing that they owe *nothing* to the plaintiffs, assert that Birch never signed a CBA with any of the local unions. But they do not deny that he signed the Statewide Agreement, which incorporated certain terms of each of the relevant CBAs. Birch explicitly admitted this at his deposition. (Doc. No. 25 at 25–26.) Thus, there can be no dispute as to the underlying liability for contributions to the Funds.

Birch also admitted at his deposition that contributions were due according to the schedule described above. (*Id*. at 45.) But he acknowledged that he "never filed the forms [required to report hours] and [never] paid by the 15th [of the] following month. Ever." (*Id*. at 46.) Birch claims the schedule did not apply to MCC because he had a separate oral side agreement with David Wondolowski ("Wondolowski"), a trustee for certain funds of non-party Local Union No. 5, that MCC could make its payments whenever MCC was paid by its contractors, so long as it did not fall two months behind. (*Id*. at 28.) This "defense" is easily dispatched as meritless as a matter of law.

---

[5] Although the audit letter is not in the record, at the hearing plaintiffs' counsel represented to the Court, without objection from defendants, that the auditors requested contribution reports for "any Bricklayer locals other than Local 5." Defendants produced documents and answered deposition questions relating to Local 6 (without objection), and defendant Birch even mentioned Local 6 in his affidavit filed in support of defendants' opposition brief. (*See* Doc. No. 28-1.)

7

"Because 'multiemployer plans are entitled to rely on the literal terms of written commitments between the plan, the employer, and the union, the actual intent of and understandings between the contracting parties are immaterial.'" *Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556, 562 (6th Cir. 2015) (quoting *Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co. of Ohio*, 133 F.3d 955, 959 (6th Cir. 1998)).

As a threshold matter, Wondolowski, who is associated with Bricklayers Local Union 5 (*see* Doc. No. 24-24, Declaration of David Wondolowski (*passim*)), had no authority to speak for, much less bind, the plaintiffs here.

Further, even if Wondolowski were found to be an agent of these plaintiffs, "[a]ny conduct of [a] Union that is contrary to the written provisions of the agreements cannot affect the Funds' right to collect contributions that are due and owing to the Funds." *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1053 (6th Cir. 2015) (citation omitted).[6] The terms of the CBAs and the Statewide Agreement are clear in their requirement that hours must be reported and contributions made by the 15th day of the month following when work was performed. Any oral (or written) statement by Wondolowski (or anyone else) does not, and cannot, alter that fact.[7]

The Court concludes that there is no dispute as to the underlying liability to the relevant Funds for *delinquent contributions* owed by MCC for work performed by members of Local 6, Local 7, Local 16, and Local 40 from April 10, 2017 through August 31, 2020. To that extent,

---

[6] *Operating Eng'rs Local 324* recognizes the availability of "a few defenses, including illegality of the contributions, the contract requiring contributions was void at its inception, or the union was decertified." 783 F.3d at 1052. None of those are applicable here.

[7] Wondolowski claims he never made the statement Birch relies upon. (Doc. No. 24-24 at ¶¶ 18–20.) The Court need not resolve the factual dispute (and it is not material for purposes of summary judgment) because, given the case law cited herein, such factual resolution would have no legal consequence in this situation.

8

plaintiffs are entitled to summary judgment against MCC. The *amount* of such contributions remains to be determined.

**B.  Whether Birch is Personally Liable for Breach of Fiduciary Duty and/or for Engaging in Prohibited Transactions**

Under ERISA,

> a person is a fiduciary with respect to [an ERISA] plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries . . . [.]" 29 U.S.C. § 1104(a)(1)(A). Further, "[a]ny person who is a fiduciary with respect to a plan who breaches any responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . ." 29 U.S.C. § 1109 (a).

Plaintiffs argue that Birch was a fiduciary and that, by his use (or misuse) of plan assets, he breached that duty rendering him personally liable to the Funds and the Local Unions. (Doc. No. 24 at 20–25.)

To hold Birch personally liable, the record must show that the unpaid contributions were "plan assets" and that Birch was a fiduciary because he exercised "authority and control" over the management or disposition of those assets. *Mich. Reg'l Council of Carpenters Emp. Benefits Fund v. Elite Poured Walls, Inc.*, No. 16-cv-12909, 2017 WL 2264788, at *6 (E.D. Mich. May 24, 2017). Plaintiffs argue that both elements are established here.

9

Several courts have found that "pension and benefit fund contributions are plan assets as soon as they are due and owing." *Trs. of Bricklayers & Masons' Local Union No. 5, Ohio Pension Fund v. VIP Restoration, Inc.*, No. 1:17-cv-1091, 2018 WL 2270949, at *5 (N.D. Ohio Mar. 2, 2018) (collecting cases). Other courts find that "delinquent contributions are not plan assets unless the governing plan documents declare[] otherwise." *Id*. at *6 (citing cases).

Under either line of cases, MCC's unpaid contributions would be plan assets. "Under the first [line], by being delinquent, the unpaid contributions are automatically plan assets[.]" *Id*. Under the second line, the fund documents make the required declaration. (*See* Doc. No. 24-12, Ohio Bricklayers Health & Welfare Fund Trust Agreement at 4 (§ 1.20) & at 5 (§ 4.1(e)); Doc. No. 24-13, Ohio Bricklayers Pension Fund Plan at 9 (§ 1.13) ("[c]ontributions or other monies received from or owing from an [e]mployer and/or an individual(s) who has control over the payment of such [c]ontributions shall be deemed [t]rust [f]und assets."); Doc. No. 24-14, Local 7 Pension Plan Declaration of Trust at 3 (§ 6) ("Fund" means "the entire assets thereof, including all funds received or due to be received . . . in the form of [e]mployer [c]ontributions (including delinquent [e]mployer [c]ontributions)").)

As to the second element for finding Birch personally liable, "[f]ull control of [a] company and the power to spend its money has been repeatedly found sufficient by courts to demonstrate[] that the officer-defendant is an ERISA fiduciary and can be held personally liable for ERISA contributions." *VIP Restoration*, 2018 WL 2270949, at *6 (citing *Trs. of Plumbers & Pipefitters Local No. 333 Health & Welfare Fund v. Grindall & White, Inc.*, No. 12-cv-10977, 2013 WL 5450273, at *3 (E.D. Mich. Sept. 30, 2013) (finding an individual personally liable as a fiduciary where he was the sole owner, president, and operator of the delinquent employer and managed its day-to-day affairs); *Trs. of Detroit Carpenters Fringe Benefit Funds v. Nordstrom*, 901 F. Supp.

10

2d 934, 941–42 (E.D. Mich. 2012) (finding an individual personally liable as a fiduciary where he was the sole owner and officer of the delinquent employer and made or could make all day-to-day decisions)).

Birch, as president and secretary/treasurer of MCC, hired and fired employees and set wages and benefits. (Doc. No. 25 at 20–21; 33–34.) He handled MCC's finances, authorized the borrowing of money and the payment of bills, and signed checks on behalf of MCC. (*Id*. at 84–85.) He prepared and signed all tax forms. (*Id*. 42; 86.) He was the person at MCC ultimately responsible for submitting contribution forms and making contributions to the various Funds. (*Id*. at 21; 42–43.)

Plaintiffs also claim that Birch used MCC's funds as if they were his own, funneling money to his other company, Birch Group, LLC,[8] and using MCC funds to pay his personal debts. Although MCC, authorized by Birch, borrowed money from several sources (including Kabbage, Strategic, Civista Bank, Huntington Bank, Ally, RME, and Birch's wife), the loan proceeds were never applied to pay contributions to the Funds. (Doc. No. 24 at 25 (citing Birch deposition testimony and exhibits).)

The Funds point out Birch's admission that, during the relevant time period, he directed money from MCC to other entities, including Birch Group, LLC, variously recording it as rent, loans, and payment for materials or equipment. (Doc. No. 25 at 24; 92–93.) Birch even purchased his own cigars from MCC funds. (*Id*. at 93.) Birch also allegedly used MCC employees to paint and do plumbing and other work at the property owned by Birch Group, LLC, and to perform

---

[8] Birch owned Birch Group, LLC, which owned the real estate where MCC's shop was located. (Doc. No. 25 at 11; 24.)

work, including landscaping and lawn mowing, at Birch's personal residence. (*Id*. at 68–69; 81.) Birch claimed he did it to "keep them busy." (*Id*. at 68.)

This undisputed evidence is sufficient to establish that Birch may be held personally liable in this case because he exercised "discretionary authority" and "discretionary control" over MCC's funds that amounted to "plan assets" because they were due and owing under the relevant plan documents.

Plaintiffs argue that Birch, in addition to breaching his obligations as a fiduciary, also violated ERISA by engaging in prohibited transactions with and on behalf of MCC, a "party in interest." (*See* Doc. No. 24 at 26.) Plaintiffs are correct, based on the record evidence above showing that Birch used MCC's funds that qualified as "plan assets" for himself, for Birch Group, LLC, and for the benefit of MCC by paying its creditors in various instances.

For the reasons set forth above, plaintiffs are entitled to summary judgment against Birch individually.

**C.     Amount Owed Jointly and Severally by MCC and Birch**

Under the relevant CBAs, if fund contributions were not timely made—which the Court has now concluded is true here—the employer would be assessed, in addition to the contributions owed, both liquidated damages and simple interest, plus any attorney fees incurred as a result of the need to enforce contributions. (*See, e.g.*, Doc. No. 24-6 at 11 (Section N: "If such benefits are not [timely] paid . . . such employer signatory hereto agrees to the late payment penalty as prescribed in the various fund trust agreements including but not limited to interest, liquidated damages and attorney fees."); *see also* Doc. No. 24-8 at 16; Doc. No. 24-9 at 36; Doc. No. 24-10 at 20.)

Further, under both the Statewide Agreement and the Funds' Employer Delinquency Procedures and Audit Policy (Doc. No. 24-15), the various Funds had the right to audit an employer's records to ascertain whether the employer was making full and prompt payment of all sums owed to the Funds. (Doc. No. 24-5 at 7; Doc. No. 24-15 at 6–7.) In that event, delinquent employers are required to "pay the full cost of the audit[,]" and the Funds must "collect all attorney fees, expenses, and costs incurred in connection with any legal action necessary to compel the conduct of an audit." (Doc. No. 24-15 at 7.)

Despite defendants' argument to the contrary, plaintiffs have shown that, pursuant to the CBAs and ERISA, MCC is liable not only for contributions, but also for liquidated damages, interest through December 7, 2020, audit fees, and attorney fees and costs.

Plaintiffs supplied the audit report conducted by the Funds' accountants at Blue & Co. that was apparently based on information collected through discovery. (*See* Doc. No. 24-3.)[9] Plaintiffs state in their motion that "[t]he auditor applied the rates applicable in each Local to the hours worked as recorded by MCC . . . in MCC's time records, and compared those hours worked with the hours reported and paid to the Funds." (Doc. No. 24 at 17.)

"An auditors [sic] findings are presumed accurate as a proper measure of delinquent contributions unless refuted by defendant." *Sullivan v. Gill*, No. 97-cv-446, 1999 WL 495494, at *3 n.4 (N.D. Ill. June 30, 1999) (citations omitted) (*cited by Trs. of Laborers, Local 310 Pension Fund v. Able Contracting Grp., Inc.*, No. 1:04-cv-2294, 2008 WL 11383292, at *5 (N.D. Ohio Aug. 29, 2008)).

---

[9] It is unclear whether plaintiffs believe they are still entitled to conduct a formal audit, as requested by the complaint.

Although stipulating that the documents used by the auditors to prepare their report are "authentic business records" of MCC (*see* Doc. No. 22, Joint Stipulation[10]), defendants challenge the audit report, arguing that there are material factual disputes that preclude a summary ruling as to the money judgment sought by plaintiffs.

Defendants argue that any liability with respect "unaccounted for hours" or "unreported hours" has already been determined to belong to plans and funds related to Local Union 5 in the case decided by Magistrate Judge Burke. They claim that the instant lawsuit is attempting to recover for "the same years and period in question . . . and for the same employees[.]" (Doc. No. 28 at 7 (identifying a few examples).) Defendants also challenge hours and contributions related to Local Unions 6, 7, 16, and 40 for several reasons, arguing that they are simply not owed. (*Id.* at 9–10.)[11] For the reasons discussed below, the Court declines to rule now as to the specific amount owed by the defendants, and this portion of the motion is denied without prejudice to refiling.[12]

During an impromptu settlement conference conducted prior to the hearing on September 10, 2021, the Court discussed with counsel and defendant Birch defendants' assertion that anything that may be due in this case was already (or will be) paid as part of the judgment in the Local 5 case decided by Magistrate Judge Burke. The parties agreed to reach out to counsel in the Local 5 case to attempt to sort out any possible overlap and to further attempt to negotiate a global resolution with regard to a monetary judgment for each of the relevant entities in both cases. The Court encourages a global resolution if one can be achieved. (In encouraging the parties to reach

---

[10] This document is incorrectly identified in the docket text as "proposed." It is actually captioned as a "Joint Stipulation" and it is signed by each party's counsel.

[11] Defendants also argue that the payments are not delinquent due to Birch's alleged side deal with Wondolowski. (Doc. No. 29 at 10–11.) The Court has already rejected this argument as a matter of law.

[12] Defendants also assert that summary judgment should be awarded in *their* favor "at least as related to unreported/under-reported hours and unreported/under-reported contributions." (Doc. No. 29 at 8.) This is not a proper motion for summary judgment and the Court declines that request.

a global resolution, the Court is not indicating whether there is any merit to the defendants' argument.)

That said, the Court concludes that plaintiffs are entitled to recover liquidated damages, interest, audit fees, and attorneys' fees and costs against the defendants on a joint and several basis, but defers any ruling as to a final *amount* of the money judgment due to plaintiffs to allow the parties time to attempt a global resolution involving all of the local unions. Should a global resolution not be achieved, this Court will determine the amount of the monetary judgment in the instant case. For now, though, that determination is deferred.

## IV. CONCLUSION

For the reasons set forth herein, plaintiffs' motion for summary judgment (Doc. No. 24) is granted as to defendants' joint and several liability for delinquent contributions, plus interest, liquidated damages, and audit fees, in addition to reasonable attorneys' fees and costs, with the amount of each yet to be determined consistent with this ruling.

Plaintiffs are also entitled to a permanent injunction against MCC and Birch pursuant to Section 502(g)(2)(E) of ERISA prohibiting future violations of Section 515 of ERISA, 29 U.S.C. § 1145, with respect to all the named Funds.

Plaintiffs motion to strike defendants' jury demand (Doc. No. 26) is granted, defendants having conceded during the hearing that they are not entitled to a jury in this case. Defendants' jury demand is stricken.

Counsel shall confer as soon as possible (and attempt to include counsel for Local 5 in their discussions) as to the possibility of a global resolution regarding the amounts owed. Counsel shall file a joint report within two weeks of the date of this order advising the Court of any progress, a

15

proposed timeline for final resolution, and/or whether the assistance of a neutral would be desirable.

**IT IS SO ORDERED**.

Dated: September 14, 2021

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**