**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRUSTEES OF OHIO BRICKLAYERS | ) | CASE NO.  5:20-cv-368 |
| HEALTH AND WELFARE FUND, et al., | ) | |
| | ) | JUDGE SARA LIOI |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MASONRY CONTRACTING | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is the motion for summary judgment on damages filed by plaintiffs Trustees of Ohio Bricklayers Health and Welfare Fund, Trustees of Ohio Bricklayers Pension Fund, Trustees of Ohio Bricklayers Apprenticeship, Education, and Training Trust Fund, Trustees of the Bricklayers and Allied Craftworkers Local No. 7 Pension Fund, Trustees of the Bricklayers and Allied Craftworkers Local Union No. 16 Vacation and Savings Fund (collectively, the "Funds"); and Bricklayers and Allied Craftworkers Local Union No. 7, Bricklayers and Allied Craftworkers Local Union No. 16, and Bricklayers and Allied Craftworkers Local Union No. 40 (collectively, the "Unions") (both groups together, "plaintiffs"). (Doc. No. 35.) Defendants Masonry Contracting Corporation ("MCC") and Matthew J. Birch ("Birch") (collectively, "defendants") filed a brief in opposition (Doc. No. 38) and plaintiffs filed a reply (Doc. No. 39). For the reasons set forth herein, the motion is granted and judgment will be separately entered in plaintiffs' favor against defendants.

## I.     Background

On February 19, 2020, plaintiffs filed a complaint against defendants under the Labor-Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 185, and the Employee Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1109, 1132(a)(3), (e), (f) & (g) and 1145. In count I, plaintiffs alleged that MCC breached its obligations to make contributions and deductions pursuant to collective bargaining agreements ("CBAs") and Fund documents. In counts II and III, plaintiffs alleged that Birch breached his fiduciary duties and engaged in prohibited transactions.

On September 14, 2021, this Court granted plaintiffs' motion for summary judgment on liability, drawing several conclusions:

- "[T]his lawsuit properly encompasses delinquencies related to Locals 6, 7, 16 and 40." (Doc. No. 33, Memorandum Opinion and Order at 7);

- "[T]here is no dispute as to the underlying liability to the relevant Funds for *delinquent contributions* owed by MCC for work performed by members of Local 6, Local 7, Local 16, and Local 40 from April 10, 2017 through August 31, 2020." (*Id*. at 8 (emphasis in original));

- "[P]laintiffs are entitled to summary judgment against Birch individually." (*Id*. at 12); and

- "[P]laintiffs have shown that, pursuant to the CBAs and ERISA, MCC is liable not only for contributions, but also for liquidated damages, interest through December 7, 2020, audit fees, and attorney fees and costs." (*Id*. at 13).

Ultimately, the Court concluded that "plaintiffs are entitled to recover liquidated damages, interest, audit fees, and attorneys' fees and costs against the defendants on a joint and several basis[.]" (*Id*. at 15.) The Court also permanently enjoined defendants against future ERISA violations. (*Id*.)

Because defendants had challenged the Audit Report submitted by plaintiffs in support of their request for summary judgment as to damages—in particular, because defendants claimed the Audit Report included unaccounted for hours and unreported hours that had already been determined in a case decided by Magistrate Judge Burke[1]—this Court deferred a ruling on damages and encouraged the parties to "reach out to counsel in the Local 5 case to attempt to sort out any possible overlap and to further attempt to negotiate a global resolution with regard to a monetary judgment for each of the relevant entities in both cases." (*Id*. at 14.) The Court noted, however, that "[s]hould a global resolution not be achieved, this Court will determine the amount of the monetary judgment in the instant case." (*Id*. at 15.) That is the current posture of the case, plaintiffs having renewed their motion for summary judgment as to damages.

## II.    Legal Standard

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Once the moving party has presented evidence sufficient to support a motion for summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ*., 351 F.3d 240, 247

---

[1] *See Local Union No. 5 Trustees of the Bricklayers & Masons', Ohio Pension Fund v. Masonry Contracting Corporation*, No. 1:19-cv-1273 (N.D. Ohio Jan. 25, 2021) ("the Local 5 case") (granting summary judgment in favor of Local 5 Funds and issuing a monetary judgment covering delinquent contributions, liquidated damages, and attorney fees and costs).

(6th Cir. 2003) (quotation marks and citation omitted). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.") (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

## III.    Discussion

The plaintiffs re-filed their motion for summary judgment as to damages, supported by the declaration of the fund auditor Damien Strohmier (Doc. No. 35-1), the auditor's resume (Doc. No. 35-2, Ex. 1), and an audit report dated December 7, 2020 (Doc. No. 35-3, Ex. 2), as supplemented with Appendices I and J calculating interest through November 30, 2021[2] (Doc. No. 35-4, Ex. 3). The motion sets forth the amounts due to each of the seven plaintiffs.

On December 17, 2021, defendants filed their opposition brief, which, notably, contains the same arguments regarding liability that this Court has already rejected. For example, defendants argue, *inter alia*, (1) that MCC is not liable to plaintiffs because it did not sign any CBA with any local union (Doc. No. 38 at 2, already rejected by the Court in Doc. No. 33 at 7); (2) that MCC was not delinquent for failure to make payments on the fifteenth of each month because it had a separate side agreement that it could pay the contribution benefits when it was

---

[2] The auditor's declaration indicates that "[s]ubsequent to the preparation of the December 7, 2020 Report, the Funds requested that we update the interest calculations. As requested by the Funds, Blue & Co. prepared additional Appendices I and J calculating interest through November 30, 2021. … No changes were made to the amounts of contributions, deductions, and liquidated damages found due and owing pursuant to the Report dated December 7, 2020. (Doc. No. 35-1 at 1–2 ¶ 3.)

paid by its contractors (Doc. No. 38 at 3, already rejected by the Court in Doc. No. 33 at 7–8); (3) that any contributions due for work in Local 6 are not properly included in this lawsuit (Doc. 38 at 4, already rejected by the Court in Doc. No. 33 at 7); and (4) that Birch is not personally liable as a fiduciary and, in any event, would be liable only for the principal, not for interest, liquidated damages, and/or attorney fees (Doc. No. 38 at 8, already rejected by the Court in Doc. No. 33 at 9–15). These arguments need not be revisited in the instant discussion; the Court's original rulings stand.[3]

To the extent the opposition brief attempts to address the issue of damages by attacking individual elements of the plaintiffs' audit report, the brief is equally flawed. None of these specific arguments have any merit based on this record.

First, defendants persist in their general insistence that the claims made in this case were already covered by the summary judgment entered in the Local 5 case, which, according to defendants, creates a genuine issue of material fact and precludes summary judgment here. (Doc. No. 38 at 4.) This argument is completely unsupported by any legal authority. Moreover, defendants do not explain how a judgment for funds and work relating to Local 5 covering an audit period of 2017 through March 31, 2020, would satisfy defendants' liability to the Funds and Unions in *this* case (relating to Locals 6, 7, 16 and 40) for an audit period covering 2017 through

---

[3] To the extent defendants may also be attempting to raise defenses of res judicata, collateral estoppel, and/or preclusion based on the judgment in the Local 5 case, these "are affirmative defenses that must be pleaded." *Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971) (citing Fed. R. Civ. P. 8(c)). Neither defendant pleaded any of these affirmative defenses. (*See*, Doc. Nos. 5 and 6, Answers.) Therefore, even if these defenses might have been available to either defendant, which the Court need not determine, they have all been waived. *Old Line Life Ins. Co. of Am. v. Garcia*, 418 F.3d 546, 550 (6th Cir. 2005) ("As a general rule, failure to plead an affirmative defense results in a waiver of that defense."). Although "'failure to plead an affirmative defense does not always result in waiver[,]'" *ATSCO Holding Corp. v. Air Tool Serv. Co.*, 799 F. App'x 310, 312 (6th Cir. 2019) (quoting *Old Line*), since "[a] 'defendant does not waive an affirmative defense if [h]e raised the issue at a pragmatically sufficient time and [the plaintiff] was not prejudiced in its ability to respond[,].'" *id.* (quoting *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993) (alterations in original)), that is not the situation here. Moreover, there is no identity of parties or claims between this case and the Local 5 case.

August 31, 2020. They simply declare (again) that the Local 5 decision resolved "claims pertaining to unpaid contributions for unreported work not previously reported to Locals 6, 7, 16 and 40 and their trusts . . . —in favor of Local 5." (*Id*. at 4 (quoting *Local 5*, Doc. No. 36 at 8) (". . . the auditor calculated the contributions the only way he could: he divided the employees' earnings stated in their W-2s by the rate of their pay to make an initial determination of hours; subtracted the hours MCC had reported to Local 5 and other Bricklayers Locals; subtracted hours identifiable as those performed in MCC's shop, which is outside of Local 5's geographical jurisdiction; and the remaining hours were treated as unaccounted and un-reported to Local 5.").) But this quite clearly says that the auditor "subtracted" hours that had been reported to "other Bricklayers Locals[.]" Therefore, defendants' persistent reference to the Local 5 case as having already decided the issues in *this* case is not accurate.

Second, defendants claim they made payments toward their liability through "[j]oint party checks from contractors and payments directly from general contractors[,]" implying that these are not accounted for in the audit report. (*Id*. at 3.) They supply copies of several checks purportedly proving their point. (*See* Doc. No. 38-4 at 22,[4] 24–27[5].) But the audit report (in particular, Appendix H), as well as the auditor's declaration, specifically state that MCC was given credit for all payments. (Doc. No. 35-3 at 2, 4, 64–67; Doc. No. 35-1 ¶ 10.) Defendants offer nothing, much less any specific record reference, to refute that.

Third, defendants assert that the audit report impermissibly includes "shop hours" and work of certain employees who performed both hourly (*i.e.*, covered) and supervisory (*i.e.*, not covered)

---

[4] This check is payable to MCC and Bricklayers International Pension Fund. But the latter is not a party to this action, rendering this check irrelevant from an evidentiary standpoint.

[5] These two checks are payable to (1) MCC and Ohio Bricklayers Fringe Fund, and to (2) MCC and Painesville Credit Union. These checks had no impact on the findings. The auditor declared that the former was credited to defendants in the audit report and the latter reflected payment for work in May 2020 for which MCC owed no amount to the Funds here. (Doc. No. 39-3, Strohmier Declaration (12/22/2021) ¶¶ 3–4.)

tasks. (Doc. No. 38 at 3–4.) But both the audit report and the auditor's declaration state that the findings "exclude all shop hours from consideration as covered hours," and that "shop hours were excluded from the analysis." (Doc. No. 35-3 at 2; Doc. No. 35-1 ¶ 7.) In addition, Birch testified at his deposition in March 2020 that MCC had no supervisory personnel except himself; rather, the employees now identified as supervisors were "bricklayer foremen." (Doc. No. 23-24 at 8.) Therefore, no "supervisory" hours could have been included.

Beyond these very specific unsuccessful challenges to the audit report, defendants next argue generally and in a conclusory fashion, that "[their] analysis, supporting documentation, and evidence to refute [p]laintiffs . . . indicate the Audit Report is flawed, and wrong based on refuted evidence." (Doc. No. 38 at 4–5.) Defendants state:

> Attached hereto are four exhibits and one summary which refute [p]laintiffs' Audit Report. They include analysis of reports, with supporting documentation and supporting documentation references, to substantiate the analysis and conclusions by providing evidence to refute the Audit Report. They show and demonstrate errors and flaws and omission with the Audit Report.

(*Id*. at 5.) Defendant Matthew Birch supplied a declaration in support of defendants' opposition brief that states, in relevant part:

> 9.      Attached as Exhibits 2, 3, 4, and 5 are my reviews of the Blue & Co[.] Audit Report and I have included true and accurate business records of MCC to refute the claims fond [sic] in the Audit report.
>
> 10.     Exhibit 2 has supporting *document attachments numbered 01 to 33* (62 pages), Exhibit 3 has supporting *document attachments 01 to 05* (7 pages), Exhibit 4 has supporting *document attachments numbered 01 to 07* (34 pages), and Exhibit 5 has supporting *document attachments numbered 01 to 09* (21 pages). Each of the supporting document attachments are true and accurate business records of MCC.

(Doc. No. 38-7 (italics added).) But Exhibits 2, 3, 4, and 5, although each containing the *number* of pages identified in paragraph 10 above, are little more than stacks of unidentified pages. They are certainly *not* numbered in the double-digit fashion indicated by Birch. In fact, most of the pages

7

say "Page 1" or "Page 1 of 1" in the lower right-hand corner. It is completely impossible to identify which pages constitute which attachment(s) to any of the four exhibits.

In addition, defendants' brief in opposition to the motion states that Exhibit 2 contains a "first page" with "columns identified with letters A–P[,]" and "several notes on the bottom[.]" (Doc. No. 38 at 6.) The page in the record (Doc. No. 38-2 at 1) has columns only through letter "N" and the notes on the bottom are partially cut off.

The opposition brief further states: "The first column of the first page of Exhibit 2 (which is not a lettered column) is headed 'Column' also described as 'Description of Appendix B Summary or Reportable Hours' . . . ." (Doc. No. 38 at 6.) Defendants claim that "[e]ach line of that 'Column' is disputed." (*Id.*)  But there is no such column without a letter, since the final column on the page is "N."

And Exhibit 2 purportedly contains "correlating references to evidence refuting the Audit Report [for the audit period 2017]." (*Id.* at 7.) The opposition brief explains: "For example, '01' in Colum[n] D is a notation to the attached page marked 01 which is evidence to support MCC, MCC's review and refute Blue & Co." (*Id.*.) But since the attachments actually do not contain the double-digit numbers referenced, it is impossible to find the "correlating reference[]" materials that purportedly support defendants' position and refute plaintiffs' Audit Report. Supposedly, "[c]olumns F, G, H, I and J" contain similar information for audit period 2018, and "columns K, L, M, N, and O" are for audit period 2019. (*Id.*) And finally, defendants assert that "[t]he same analysis is provided for Local 40 (Exhibit 3), Local 16 (Exhibit 4), [and] Local 6 (Exhibit 5)." (*Id.*)

But, as already noted, because the documents accompanying the defendants' opposition brief are not actually labeled or otherwise identified, "evidence" (if any) contained therein is little

more than the proverbial "needle in a haystack," and defendants' attempt to describe what is arguably contained in those documents provides no guidance to the Court.

As noted in this Court's summary judgment ruling on liability:

> "An auditors [sic] findings are presumed accurate as a proper measure of delinquent contributions unless refuted by defendant." *Sullivan v. Gill*, No. 97-cv-446, 1999 WL 495494, at *3 n.4 (N.D. Ill. June 30, 1999) (citations omitted) (cited by *Trs. of Laborers, Local 310 Pension Fund v. Able Contracting Grp., Inc.*, No. 1:04-cv-2294, 2008 WL 11383292, at *5 (N.D. Ohio Aug. 29, 2008)).

(Doc. No. 33 at 14.) In their reply brief, plaintiffs explain, with references to the auditor's declaration, how the calculations were made: "not[ing] deficiencies in MCC's records, but [giving] MCC the benefit of the doubt . . . on information available from the face of the records[]" (Doc. No. 39 at 7);  compiling hours for the four local unions "[b]ased on the timesheets prepared by MCC, and Birch's deposition testimony, as well as records of which hours had been paid to the Funds[.]" (*Id*. at 8.) The auditor specifically declared that "[n]o hours recorded by [MCC] as having been worked in the jurisdiction of [Local 5] were included" in the Audit Report." (*Id*.)

Fed. R. Civ. P. 56(c)(1)(A) requires a party "asserting that a fact cannot be or is genuinely disputed" to support such assertion by "citing to particular parts of materials in the record[.]" Given the marked deficiencies in defendants' opposition brief and the documents supporting it, as well as defendants' complete failure to refute plaintiffs' summary judgment facts (and arguments) with any specificity in light of the record, plaintiffs are entitled to the judgment on damages that they seek.

## IV.    Conclusion

For the reasons set forth herein, plaintiffs' motion for summary judgment on damages (Doc. No. 35) is granted. Summary judgment is granted in favor of plaintiffs (and will be separately itemized as to each plaintiff in the judgment entry) and against defendants Masonry Contracting

Corporation and Matthew J. Birch, jointly and severally, in the aggregate amount of 51,213.00 (plus post-judgment interest), and in favor of plaintiffs and against defendant Masonry Contracting Corporation in the additional aggregate amount of $10,054.65 (plus post-judgment interest), plus attorneys' fees and costs.

**IT IS SO ORDERED**.

Dated: March 31, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**